IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THREE CROWN APARTMENTS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PNC BANK,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. C -12-03579 EDL<br><br>**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANT'S MOTION TO DISMISS** |

In this putative class action, Plaintiff Three Crown Apartments alleges that Defendant PNC Bank engaged in false advertising and unfair competition in connection with making real estate loans in violation of California Business and Professions Code sections 17200 and 17500. On September 6, 2012, Defendant filed a motion to dismiss Plaintiff's complaint. On October 16, 2012, the Court held a hearing on Defendant's motion. For the reasons stated at the hearing and in this Order, Defendant's motion to dismiss is granted with leave to amend. As agreed at the hearing, any amended complaint shall be filed no later than October 30, 2012. Thereafter, Defendant shall inform the Court as to whether it intends to file a motion to dismiss, or whether it will answer the complaint.

**Allegations from the complaint**

Plaintiff alleges that Defendant is the servicer for a real estate secured loan known as the Three Crowns Loan that was assumed, with the written consent of the then owner of the Three Crown Loan, by Plaintiff on May 20, 2009. First Am. Compl. ("FAC") ¶ 5. The parties to the Assumption Agreement were non-parties U.S. Bank, the lender, and Three Crown LLP, the then-current property owner. Def.'s Ex. 1 at 1. Pursuant to the Assumption Agreement, Plaintiff assumed all of Three Crown LLP's loan obligations that initially arose under the loan that financed the Three Crown apartment complex. Def.'s Ex. A at Preliminary Statement C. In particular,

1  Plaintiff assumed a $4,675,000 promissory note dated March 30, 2007 between non-party Three
2  Crown LP and the original lender, non-party ARC Commercial Co. (the "Three Crown Loan").
3  FAC Ex. A.  That debt was secured by the real estate, rents and improvements comprising the Three
4  Crown Apartments.  FAC ¶¶ 6, 7, Ex. A at § 1.03; Def.'s Ex. 1 at Preliminary Statements A, B.

The Assumption Agreement states in part that: "New Borrower [Plaintiff] acknowledges that it has received copies of all Loan Documents."  Def.'s Ex. 1 at § 1.2(*l*).  "Loan Documents" are the promissory note and Assumption Agreement, and "any and all other agreements, documents, instruments evidencing, securing or in any manner relating to the Loan, as all of the same may be amended, restated, supplemented or otherwise modified from  time to time."  Def.'s Ex. 1 at Preliminary Statement B.  In addition, the Assumption Agreement states: "Borrower Parties at all times have had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement and have had the opportunity to review and analyze this Agreement for a sufficient period of time prior to execution and delivery."  Def.'s Ex. 1 at § 4.4.

The promissory note for the Three Crown Loan sets forth a specific per annum interest rate of 5.88% ("Stated Rate").  FAC ¶ 8; Ex. A.  Plaintiff alleges that it reasonably understood and expected that the Stated Rate of 5.88% completely and accurately stated that full amount of interest it would pay per annum.  FAC ¶ 9.

The promissory note also states:

> Interest shall be computed hereunder based on a three hundred sixty (360) day year and paid for the actual number of days elapsed for any whole or partial month in which interest is being calculated.

FAC Ex. A at 1 at ¶ 1.01.  Plaintiff alleges that Defendant treated this language as permitting it to employ something known as the 365/360 method to calculate interest.  FAC ¶ 11.  Under the 365/360 method, a borrower pays an extra five or six days of interest per annum, and thus, ends up paying more interest per annum than the Stated Rate.  FAC ¶ 12.  This is in contrast with the 360/360 method to calculate interest wherein all years are treated as fiscal years that are simply defined as each having a uniform 360 days in them.  FAC ¶ 11.

Plaintiff alleges that in this case, Defendant unilaterally withdraws interest payments for itself from Plaintiff's bank account at a per diem rate of $774.18 when, but for Defendant's use of

2

the 365/360 method, Defendant could, consistent with a 360/360 method, only pay itself interest at a per diem rate of $763.58. FAC ¶ 13. Plaintiff alleges that this $10.60 per day difference amounts to $3,870.94 additional interest expense to Plaintiff during every 365 day year. FAC ¶ 13. As a percentage, the additional interest expenses is an increase of 0.16% over the Stated Rate of 5.88%, which equals a per annum interest rate of 6.04% ("Effective Rate"). FAC ¶ 13.

Plaintiff alleges that it did not know that it was paying the Effective Rate rather than the Stated Rate of interest until early 2012. FAC ¶ 14. Plaintiff alleges that upon first learning of this, it immediately protested the use of the 365/360 method. FAC ¶ 15. Plaintiff alleges that because Defendant coerced Plaintiff and threatened to initiate a non-judicial foreclosure should Plaintiff cease paying interest at the Effective Rate, Plaintiff has continued to permit Defendant to unilaterally withdraw interest from Plaintiff's bank account at the Effective Rate rather than at the Stated Rate. FAC ¶ 16.

Plaintiff filed this complaint on July 9, 2012, alleging claims for false advertising (Cal. Bus. & Prof. Code § 17500), and unfair competition (Cal. Bus. & Prof. Code § 17200). Plaintiff alleges that this case should be certified as a class action comprised of the following persons and entities:

1.  All California resident persons or entities owning California real property which is security for promissory notes, and who made loan payments to PNC [Defendant] for the benefit of any principal of PNC wherein PNC used the 365/360 method to collect interest in excess of the Stated Rate for promissory notes, the language of which promissory notes does not otherwise follow industry standards for giving adequate notice of PNC's use of the 365/360 method with respect to such borrowers.

2.  All non-California resident persons and entities who otherwise meet the above specifications.

FAC ¶ 18.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th

3

Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**1. Plaintiff has failed to state a claim for false advertising because Plaintiff has failed to allege that Defendant made a misleading statement[1]**

Plaintiff alleges that Defendant was or reasonably should have been aware that using the 365/360 method to collect interest in excess of the Stated Rate for promissory notes that do not otherwise follow industry standards for giving notice to borrowers is false advertising. FAC ¶ 26. Plaintiff alleges that it has been damaged to the extent that it has paid Defendant at the Effective Rate and not the Stated Rate since May 20, 2009 and will be forced to do so in the future unless the Court intervenes. FAC ¶ 25. Plaintiff alleges that there is an industry standard for giving notice to borrowers of the 365/360 calculation, and that Defendant did not follow that industry standard. FAC ¶ 27; Ex. B.

Sections 17500 et seq. prohibit negligent or intentional dissemination of false or misleading advertising. National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc., 107

---

[1] Plaintiff's complaint contains a claim for false advertising, and a claim for unfair competition. In the opposition, Plaintiff confirms that the unfair competition claim is "based on the false advertising prong of California Business and Professions Code section 17200," and "is ***not*** brought based on any claims of any otherwise unlawful, unfair, or fraudulent business acts or practices that are also disjunctively forbidden by the UCL. . . ." Opp. at 8-9 (emphasis in original).

4

Cal.App.4th 1336 (2003). These statutes proscribe the making or dissemination before the public of any statement concerning the product that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Further, unfair competition "shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Cal. Bus. & Prof. Code § 17200.

Here, Plaintiff alleges that the promissory note contained misrepresentations with respect to the 365/360 interest calculation. However, there are no allegations that Defendant, which was the loan servicer, and not the loan originator, made any statements before the public about the promissory note or any other document. There are no allegations that Defendant had any involvement with the drafting of the promissory note, or made any statements regarding the interest rate in connection with the Assumption Agreement.

In the opposition, Plaintiff argues that because Defendant currently collects on the Assumption Agreement and the promissory note, it has made ongoing representations about the interest calculation. Plaintiff points to numerous statements, such as bills, annual statements, and tax forms, all asserting that the interest due on the note was something other than was included on the note. See Sur-reply at 2. However, no allegations about these additional representations are made in the complaint.

Plaintiff also argues that the conduct of Defendant in making withdrawals from Plaintiff's account constitutes a misleading statement. Plaintiff, however, has offered no persuasive authority for interpreting this conduct as a misleading statement within the meaning of the statutes, which outlaw misleading advertising. Plaintiff cites the California Evidence Code, which defines "statement" as, among other things, "nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression." Cal. Evid. Code § 225. Cases interpreting this Evidence Code section do so for purposes of admissibility in light of the hearsay rule, not for the substantive purposes of defining a statement under sections 17200 and 17500.

Defendant argues that the language in the note was unambiguous and not deceptive, relying on out-of circuit cases. However, Defendant's authority is largely inapposite. Three of the cases

5

include contract language containing the phrase "365/360 basis," so those cases do not support Defendant's argument that the language in this case is sufficient. See Kreisler & Kreisler, LLC v. Nat'l City Bank, 657 F.3d 729, 730 (8th Cir. 2011); LDJ Invs., Inc. v. First Bank, 2012 U.S. Dist. LEXIS 3526, at *2 (S.D. Ill. 2012); Asset Exch. II, LLC v. First Choice Bank, 953 N.E.2d 446, 449 (Ill. App. 2011). In another case relied on by Defendant, Bank of America v. Shelbourne Dev. Group. Inc., 732 F. Supp. 2d 809 (N.D. Ill. 2010), the court dismissed the plaintiff's fraud claim, holding that "Shelbourne cannot state an ICFA [Illinois Consumer Fraud Act] claim based on terms that are revealed within the very loan documents that it signed," and that "Shelbourne has alleged that BOA calculated interest by using the 365/360 method, which is exactly the method called for by the loan documents. Without a false statement, Shelbourne's fraud claim must be dismissed." Id. at 826. Under California law, however, a statement can be literally true, but still misleading under section 17500. Nagel v. Twin Laboratories, Inc., 109 Cal.App.4th 39, 51 (2003). Defendant's argument based on cases interpreting other states' laws is not persuasive.

Instead, Chern v. Bank of America, 15 Cal.3d 866 (1976) is more on point. There, an individual brought a putative class action against Bank of America for, among other things, violation of section 17200 and 17500 in connection with a consumer loan. The issue was whether the public had been deceived by inclusion of the 365/360 interest calculation in the loan. The plaintiff had called the bank to inquire about a loan and was told that the interest rate would be 9%. When she executed the loan, the interest rate was 9.25% based on the 365/360 calculation, and even though it was explained to her, she signed the document. The court stated that "a statement is false or misleading if members of the public are likely to be deceived. Intent of the disseminator and knowledge of the customer are both irrelevant." Chern, 15 Cal.3d at 876. The court held that the practice of computing interest quoted as per annum on the basis of a 360-day year was likely to deceive the public, and that therefore, the plaintiff was entitled to injunctive relief.

Here, although there are no allegations of statements or communications between Plaintiff and Defendant regarding the interest rate currently in the complaint that could be the basis for a false advertising claim, Plaintiff has stated in its briefs and at the hearing that it can make additional allegations regarding subsequent communications from Defendant to support the claim. Those new

6

1 allegations may support a claim for false advertising.  Thus, Defendant's motion to dismiss is
2 granted with leave to amend the complaint.

**2.     Release and covenant not to sue**

Defendant argues that Plaintiff's claims are barred because the Assumption Agreement contains numerous references to releases from liability for past and future conduct.  The various releases in the Assumption Agreement purport to bar all of Plaintiff's claims relating to the note, even claims that had not yet accrued or matured.  The relevant parts of section 2.5 of the Assumption Agreement state that:

> Each of the Borrower Parties . . . releases, acquits, satisfied and forever discharges Lender Parties from any and all . . . causes of action of any nature whatsoever, at law or in equity, known or unknown, **either now accrued or subsequently maturing** . . .
>
> . . . each of the Borrower Parties hereby waives any and all rights and benefits with respect to any matter, cause or thing, from the beginning of the world to and including the Acquisition Date, . . . which any of the Borrower Parties now have, **or in the future may have** . . . .
>
> . . . each of the Borrower Parties hereby agrees, represents and warrants that it realizes and acknowledges that factual matters now unknown to one or more of the Borrower Parties may have given **or may hereafter give rise to causes of action** . . . and each of the Borrower Parties further agrees . . . that the release herein contained has been negotiated and agreed upon in light of the realization. . . .

Id. at § 2.5 (emphasis added).

The effective scope of the release, however, is limited by California Civil Code section 1668, which states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Further, "[i]t is now settled—and in full accord with the language of the statute—that notwithstanding its different treatment of ordinary negligence, under section 1668, 'a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law,' regardless of whether the public interest is affected."  Health Net of California, Inc. v. Department of Health Services, 113 Cal.App.4th 224, 234 (2003) (quoting Gardner v. Downtown Porsche Audi, 180 Cal.App.3d 713, 716 (1986)).

Thus, the release contained in the Assumption Agreement does not prohibit Plaintiff's claims

7

based on subsequent conduct that either intentionally or unintentionally violates state law. See Health Net, 113 Cal.App.4th at 234; Jardin v. Datellegro, Inc., 2009 WL 186194, at *6 (S.D. Cal. Jan. 20, 2009) ("Further, even if the parties intended the clause to exculpate liability for future misconduct, the clause could not cover the alleged conduct as a matter of public policy. An attempted exemption from liability for a future intentional tort or crime is generally held void. Restatement (Second) of Contracts § 195(1).").

**Conclusion**

Defendant's motion to dismiss is granted with leave to amend. The release in the Assumption Agreement does not bar Plaintiff's claims.

IT IS SO ORDERED.

Dated: October 26, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge